UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | | |
|---|---|---|
| ANNETTE M. HART, | ) | |
| | ) | |
| Plaintiff, | ) | 3:20-CV-00155-DCLC-JEM |
| | ) | |
| vs. | ) | |
| | ) | |
| HCFS HEALTH CARE FIN. SERV., LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendant's HCFS Health Care Financial Services, LLC ("HCFS") Motion for Summary Judgment [Doc. 29]. Plaintiff Annette M. Hart has failed to file a response to HCFS's motion. Accordingly, this matter is now ripe for resolution. For the reasons that follow, Defendant's Motion for Summary Judgment [Doc. 29] is **GRANTED**.

**I.     BACKGROUND**

HCFS is a medical billing and collection services company [Doc. 31, ¶ 1]. In April 2016, Hart applied and interviewed for a position with HCFS [*Id.*, ¶ 2]. During that interview, Hart told her eventual supervisor, Kelly Walker, that she had multiple sclerosis [*Id.*]. HCFS then hired Hart as an Appeals Representative in its Appeals Department. An Appeals Representative is responsible for reviewing denials of insurance claims, determining what type of appeal was necessary for a claim, preparing an appeal package with various supporting documents pertinent to the issues raised on appeal, and drafting a cover letter accompanying the appeal [*Id.*, ¶¶ 5-6]. HCFS requires Appeals Representatives to review seven invoices per hour and maintains that requirement as an essential job function for Appeals Representatives [*Id.*, ¶¶ 8-9]. From the beginning of her employment, Hart failed to meet the seven-invoice-per-hour minimum for a

majority of her first year and also made a "high amount of errors." [*Id.*, ¶¶ 10-14]. As a result, Walker had to counsel her about her deficiencies in both her production and quality performance and placed her on a performance plan beginning in January 2017 [*Id.*, ¶¶ 15-18]. Notwithstanding that, Hart's productivity continued to fall short of HCFS's standards [*Id.*, ¶¶ 18-19].

Because Hart did not improve, in May 2017, HCFS moved her to a new position in the Appeals-No Activity section of the Appeals Department [*Id.*, ¶ 20-22]. This new position was not as involved as an Appeals Representative and required checking on the status of appeals [*Id.*, ¶ 23]. For this position, HCFS required its employees review 10 invoices per hour, which was an essential function of the position [*Id.*, ¶ 26]. HCFS gave Hart a year in her new position to get up to speed, but Hart continued to struggle and only averaged four to five invoices per hour by July 2018 [*Id.*, ¶ 30]. Indeed, Hart struggled in her job through the rest of 2018 [*Id.*, ¶ 31].

In August 2018, Anita Boddie became Hart's supervisor [*Id.*, ¶ 32]. In November 2018, Boddie met with Hart about her continued failure to meet HCFS's performance standards and scheduled another meeting with her in three weeks to evaluate her performance [*Id.*, ¶¶ 32-34]. During the following three weeks, Hart's production did not improve, and on December 21, 2018, Boddie issued Hart her first written warning, advising her that she had 30 days to improve or face potential termination [*Id.*, ¶¶ 35-37]. Hart did not request an accommodation before her first written warning or immediately afterward [*Id.*, ¶ 39].

Despite the warning, Hart continued to perform poorly and, in February 2019, Boddie met with Hart again to discuss her poor performance [*Id.*, ¶ 40]. During that meeting, Boddie told Hart that she needed to improve over the next thirty days or HCFS would take further disciplinary actions [*Id.*, ¶ 41]. Hart told Boddie that she would ask her doctor for a note about the impact that her multiple sclerosis had on her ability to work [*Id.*, ¶ 42]. After the February 2019 meeting, Hart

2

provided Boddie a doctor's note that stated she could perform "the duties of her job but may do it slower than the next person." [*Id.*, ¶ 45]. Boddie forwarded the note to HCFS's Human Resources ("HR") Department, which immediately began reviewing whether HCFS could lower Hart's productivity requirement, even though Hart had not requested that [*Id.*, ¶ 47]. HCFS subsequently determined that it could not lower Hart's productivity requirement because that requirement was an essential function of her position and was the same for everyone else in that role [*Id.*, ¶ 48].

Hart continued to perform poorly after her February 2019 meeting with Boddie. Boddie tried to help her by asking other HCFS employees to assist Hart with her duties [*Id.*, ¶¶ 49-51]. Even with the extra help, Hart did not meet her requirements, which resulted in her receiving a second written warning on March 12, 2019 [*Id.*, ¶¶ 51-52]. The second written warning informed Hart that, if she did not improve in the next thirty days, she may be terminated [*Id.*, ¶ 52]. After the second written warning, Hart's productivity increased to meet her requirements, but only because other HCFS employees continued to assist her [*Id.*, ¶¶ 53-54].

Once that assistance stopped, Hart's productivity dropped again [*Id.*, ¶ 55]. HCFS then issued Hart a final written warning on April 16, 2019 [*Id.*, ¶ 57]. After receiving that warning, Hart emailed Boddie and HCFS's HR Department on April 23, 2019, and requested that her production requirements be lowered from 10 invoices per hour to six invoices per hour as an accommodation under the Americans with Disabilities Act ("ADA") [*Id.*, ¶ 81]. Even at that lower production requirement, however, Hart's hourly production rate would still fall short because she was only reviewing five invoices per hour at that time [*Id.*, ¶ 83]. Nevertheless, HCFS's HR Department again conducted a review as to whether it could lower Hart's requirements and again determined that it could not because that level of productivity was an essential function of her job [*Id.*, ¶ 82]. HCFS considered hiring additional employees to assist in Hart's role but decided

3

against that course of action [*Id.*, ¶ 85].  Hart asked Boddie whether she could be moved to a different position, but HCFS determined that there were no available positions to which Hart could be moved [*Id.*, ¶¶ 89-90, 92-93].  Moreover, Hart admitted, in an email to Boddie, that even if she did move to another position, she still would fail to meet her requirements [*Id.*, ¶¶ 93-94].

In addition to poor performance, HCFS's time tracking software noted significant gaps of time when Hart was not working [*Id.*, ¶ 58].  For example, Hart had nine unexplained gaps of time in February 2019 alone, with one such gap lasting for four hours [*Id.*, ¶ 67].  Hart could not explain the gaps in time and did not complete any paperwork to account for any work she might have done during those times that were not tracked [*Id.*, ¶¶ 68, 72-73].

In the month following her final written warning, Hart continued to fall below her productivity requirements [*Id.*, ¶ 74].  Because of her continued inability to improve her performance, HCFS terminated Hart's employment on May 24, 2019 [*Id.*, ¶ 76].  Indeed, during her deposition, Hart acknowledged that she was terminated because of her inability to meet her productivity requirements [*Id.*, ¶¶ 77-78].  Additionally, Hart acknowledged that, other than lowering her requirements, hiring additional employees to assist her, or moving her to a different position, there was nothing else that would have helped her performance [*Id.*, ¶ 80].

Hart filed her Amended Complaint against HCFS on January 26, 2021, alleging claims for failure to accommodate, failure to engage in the interactive process, discrimination, and retaliation all in violation of the ADA [Doc. 19, pgs. 1-4].  HCFS now moves for summary judgment [Doc. 29], and Hart has failed to respond within the required time.

## II. LEGAL STANDARD

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(a). The Court views the evidence in the light most favorable to the nonmoving party and makes all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). The moving party bears the burden of demonstrating that there is no genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). The moving party may meet this burden either by affirmatively producing evidence establishing that there is no genuine issue of material fact or by pointing out the absence of support in the record for the nonmoving party's case. *Celotex*, 477 U.S. at 325. When a motion for summary judgment is unopposed, as is the case here, the Court must review carefully the portions of the record submitted by the moving party to determine whether a genuine dispute of material fact exists. *F.T.C. v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 630 (6th Cir. 2014). The Court, however, will not *sua sponte* comb the record from the partisan perspective of an advocate for the non-moving party. *Id.* at 630 n.11.

Once the movant has discharged this burden, the nonmoving party can no longer rest on the allegations in the pleadings and must point to specific facts supported by evidence in the record demonstrating that there is a genuine issue for trial. *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). At summary judgment, the Court may not weigh the evidence, and its role is limited to determining whether the record contains sufficient evidence from which a jury could reasonably find for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). A mere scintilla of evidence is not enough. *Id.* at 251–52. The Court must determine whether a fair-minded jury could return a verdict in favor of the non-movant based on the record. *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994). If not, the Court must grant summary judgment. *Celotex*, 477 U.S. at 323.

5

### III. ANALYSIS

#### A. Hart's failure-to-accommodate claim

HCFS argues that Hart's failure-to-accommodate claim fails as a matter of law [Doc. 30, pgs. 15-19]. It contends that Hart cannot show that she was qualified for her position, either with or without a reasonable accommodation, and that she did not request a reasonable accommodation [*Id.*, pg. 15]. HCFS states that Hart could not perform an essential function of her job by meeting her production requirements [*Id.*, pgs. 15-16]. It notes that Hart acknowledged that she was unable to meet the production requirements [*Id.*, pg. 16]. According to HCFS, Hart also acknowledged that she could not adequately perform in other roles within the Appeals Department [*Id.*, pg. 18].

The ADA makes it unlawful for an employer to "discriminate against a qualified individual on the basis of a disability." 42 U.S.C. § 12112(a). The statute defines "discriminate" to include "not making reasonable accommodation to the known physical . . . limitations of an otherwise qualified individual with a disability" unless the employer "can demonstrate that the accommodation would impose an undue hardship." *Id.* § 12112(b)(5)(A). An "otherwise qualified individual" is one who, "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Id.* § 12111(8).

The Court analyzes a failure-to-accommodate claim under the Sixth Circuit's direct evidence test. *See Tchankpa v. Ascena Retail Grp., Inc.*, 951 F.3d 805, 811 (6th Cir. 2020) (reasoning that failure-to-accommodate claims necessarily involve direct evidence of discrimination because the Court must accept the plaintiff's factual statements as true). The Court focuses on Hart's April 23, 2019, request to have her production requirements lowered and her request to transfer to a different position because those are the only requests she made for an

6

accommodation identified in both her Amended Complaint and HCFS's statement of undisputed material facts.[1]

The Sixth Circuit's direct evidence test for failure-to-accommodate claims requires a plaintiff to show that (1) she is disabled and that (2) she is "otherwise qualified" for the position despite her disability—(a) without accommodation from the employer, (b) with an alleged "essential" job requirement eliminated, or (c) with a proposed reasonable accommodation. *Id.* Once the plaintiff makes her showing, the employer will bear the burden of proving that a challenged job criterion is essential, and therefore a business necessity, or that a proposed accommodation will impose an undue hardship upon the employer. *Id.* Importantly, the plaintiff has the burden to show that she was qualified for a position with a proposed reasonable accommodation. *See id.* at 812; *see also Kleiber v. Honda of Mfg., Inc.*, 485 F.3d 862, 869 (6th Cir. 2007).

HCFS does not dispute that Hart was disabled within the meaning of the ADA, thereby satisfying the first prong of the direct evidence test for Hart's failure-to-accommodate claim. As to the second prong, HCFS states that Hart cannot show that she was qualified for her position, either with or without a reasonable accommodation, and that she did not request a reasonable accommodation. [Doc. 30, pg. 15]. The Court assumes that Hart's two requests for accommodations were reasonable for the purposes of this motion.

Here, the record shows that Hart struggled to perform adequately in her job almost as soon as HCFS hired her. [Doc. 31, ¶ 10]. She failed to meet the seven-invoice-per-hour minimum requirement in her first year as an Appeal Representative and also made a "high amount of errors"

---

[1] In her deposition, Hart claims HCFS could have hired additional people to assist her as an accommodation, but the Court declines to treat that as a request for an accommodation because Hart never requested that of HCFS and only proposed that idea in her deposition [Doc. 31, ¶ 84].

7

on the invoices she did complete. [*Id.*, ¶¶ 10-14]. Hart's poor performance forced HCFS to place her on a performance improvement plan in January 2017, but even then, Hart still was unable to meet the production standard for Appeals Representatives. [*Id.*, ¶¶ 15-19]. Even after HCFS moved Hart to another role within the Appeals Department, she continued to struggle with her new production requirement. [*Id.*, ¶ 30]. HCFS provided additional help to Hart by pulling other employees from their work to assist her, but Hart still could not meet her requirements, save for a brief period of time after she received her second written warning. [*Id.*, ¶¶ 49-54]. When Hart eventually requested an accommodation after receiving her final written warning, her past performance indicated that she still would not be able to meet a lower production requirement. [*Id.*, ¶¶ 81-83]. Thus, Hart cannot show that she was qualified for her position without an accommodation from HCFS or with a purportedly reasonable accommodation of a lower production requirement.

Moreover, Hart's proposed accommodation of being moved to another role within HCFS would not make her qualified because she admitted she would not be able to meet the production requirements of any other role. [*Id.*, ¶¶ 93-94]. Hart admitted she was not qualified and that moving her to a new role would not improve her performance. Thus, Hart cannot establish a *prima facie* case for her failure-to-accommodate claim. Because Hart cannot establish a *prima facie* case, the Court need not address HCFS's remaining arguments. Accordingly, there is no genuine dispute of material fact as to Hart's failure-to-accommodate claim, and HCFS's motion for summary judgment is **GRANTED** in this respect.

**B. Hart's interactive process claim**

HCFS argues that it did engage in an interactive process with Hart when she made her requests for an accommodation [Doc. 30, pgs. 19-21]. It states that its HR Department discussed

8

Hart's request for a lower production requirement with her and that Boddie discussed the possibility of a transfer with her, which satisfies its obligation to engage in an interactive process [*Id.*, pg. 21].

The ADA's regulations state that, "[t]o determine the appropriate reasonable accommodation [for a given employee,] it may be necessary for the [employer] to initiate an informal, interactive process with the [employee]." 29 C.F.R. § 1630.2(o)(3). The purpose of this process is to "identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." *Id.* Accordingly, "[t]he interactive process requires communication and good-faith exploration of possible accommodations." *Kleiber*, 485 F.3d at 871 (internal quotation and citations omitted). "Even though the interactive process is not described in the statute's text, the interactive process is mandatory, and both parties have a duty to participate in good faith." *Id.* "Although mandatory, failure to engage in the interactive process is only an independent violation of the ADA if the plaintiff establishes a prima facie showing that [s]he proposed a reasonable accommodation." *Rorrer v. City of Stow*, 743 F.3d 1025, 1041 (6th Cir. 2014).

HCFS argues that it engaged in an interactive process with Hart when she made her two requests for an accommodation. [Doc. 30, pgs. 19-21]. The record shows that HCFS's HR Department discussed Hart's request for a lower production requirement with her and that the HR Department also previously undertook a review of whether it could lower her requirements before Hart had made any such request. [Doc. 31, ¶¶ 47-48, 82]. The record does not contain evidence that shows the HR Department's discussions with Hart were in bad faith or that such discussions were a sham. Similarly, Boddie and Hart discussed Hart's request for a transfer to another position. [*Id.*, ¶¶ 89-90, 92-94]. Hart admitted that a transfer would not remedy her struggling performance

and admitted that she would have trouble meeting the production requirements for another position. [*Id.*, ¶ 94]. As with the HR Department's discussions with Hart, the record does not show that Boddie's discussions with Hart were in bad faith or a ploy to satisfy HCFS's burden to engage in an interactive process. Indeed, the record shows that the process included the communication and the good-faith exploration of possible accommodations as required by *Kleiber*. Accordingly, HCFS's motion for summary judgment is **GRANTED** in this respect.

### C. Hart's discrimination claim

HCFS argues that its decision to terminate Hart was based on her failure to meet the required production standards for her position and not because of her disability [Doc. 30, pgs. 21-23]. It states that Hart cannot establish a *prima facie* case of discrimination because she cannot show that she was qualified for her position [*Id.*, pg. 22]. HCFS argues that, even if Hart could establish a *prima facie* case, it terminated her for a legitimate, non-discriminatory reason, and Hart cannot show that its reason was pretextual [*Id.*, pgs. 22-23].

Title I of the ADA provides that a covered employer "shall [not] discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Because Hart has not put forth any direct evidence of her own, or indirect evidence for that matter, the Court has no choice but to apply the Sixth Circuit's test for discrimination claims using indirect evidence. To make out a *prima facie* case of employment discrimination through indirect evidence under the ADA, a plaintiff must show that: (1) she is disabled; (2) otherwise qualified for the position, with or without reasonable accommodation; (3) suffered an adverse employment decision; (4) the employer knew or had reason to know of the plaintiff's disability; and (5) the position remained open while the

employer sought other applicants or the disabled individual was replaced. *Whitfield v. Tennessee*, 639 F.3d 253, 258–59 (6th Cir. 2011) (internal citation omitted).

The record shows that Hart was disabled within the meaning of the ADA. However, as discussed above, Hart cannot show that she was qualified for her position with HCFS, either with or without a reasonable accommodation. Thus, Hart cannot establish a *prima facie* case of discrimination. Even assuming that she could establish she was qualified for her position and meet the remaining elements of a *prima facie* case, Hart's claim still fails.

Once the plaintiff establishes a *prima facie* case under the indirect method, the burden shifts to the defendant to "offer a legitimate explanation for its action." *Babb v. Maryville Anesthesiologist P.C.*, 942 F.3d 308, 320 (6th Cir. 2019). HCFS explains that it terminated Hart because of her poor performance. [Doc. 30, pgs. 22-23]. Indeed, the record shows that Hart struggled to meet her production requirements, even with help from other employees. HCFS gave Hart several written warnings and multiple opportunities to improve her performance. [Doc. 31, ¶¶ 15-18, 20-22, 32-34, 37, 41, 49-52]. In each of those warnings, HCFS advised Hart that she faced termination if she did not improve her performance. Thus, HCFS has offered a legitimate explanation for Hart's termination.

After the employer offers a legitimate explanation for its action, "the burden then shifts back to the [employee], who must introduce evidence showing that the [employer's] proffered explanation is pretextual." *Babb*, 942 F.3d at 320 (internal quotations omitted). An employee can establish that an explanation was pretextual by showing: "(1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate the employer's action, or (3) that they were insufficient to motivate the employer's action." *Id.* (internal quotations omitted).

Hart cannot establish pretext because she has failed to respond to HCFS's motion for summary judgment and has not identified any evidence in the record that would show HCFS's purported reason for terminating her was pretextual. Moreover, the Court has reviewed the record submitted by HCFS and has not found evidence indicating its explanation for terminating Hart was pretextual. Accordingly, Hart has failed to substantiate her discrimination claim, and HCFS's motion for summary judgment is **GRANTED** in this respect.

### D. Hart's retaliation claim

HCFS argues that Hart abandoned her claim for retaliation when, during her deposition, she admitted that she was not claiming that she was terminated for requesting an accommodation [Doc. 30, pg. 23]. It contends that, even absent her admission, Hart cannot show a *prima facie* case of retaliation [*Id.*, pg. 24]. HCFS states that Hart admitted she was terminated for failing to meet her production requirements and that the record supports that reasoning [*Id.*].

The ADA provides: "No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). Because Hart has failed to put forth any direct evidence, the Court analyzes her claim for ADA retaliation using the *McDonnell–Douglas* burden-shifting approach. *Rorrer*, 743 F.3d at 1046. The plaintiff bears the initial burden to establish a *prima facie* case of retaliation, which requires a showing that (1) the plaintiff engaged in activity protected under the ADA; (2) the employer knew of that activity; (3) the employer took an adverse action against plaintiff; and (4) there was a causal connection between the protected activity and the adverse action. *Id.* Establishing a prima facie case of retaliation is a "low hurdle." *Id.* (internal quotations omitted). To establish a causal connection between a protected activity

12

and an adverse employment action under the ADA, a plaintiff must show that "but for" her protected activity, the adverse employment action would not have occurred. *Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312, 321 (6th Cir. 2012).

Here, Hart can show that she engaged in a protected activity by requesting an accommodation, that HCFS knew of her request for an accommodation, and that HCFS terminated her after she made that request, satisfying the first three prongs of the *prima facie* case for her retaliation claim. But HCFS argues, in essence, that Hart cannot show a causal connection between her termination and her request for an accommodation. [Doc. 30, pg. 23-24]. The record shows that Hart was terminated because of her poor performance during her time with HCFS. HCFS issued Hart three written warnings before terminating her, and it gave Hart time to improve her performance after each warning. [Doc. 31, ¶¶ 15-18, 20-22, 32-34, 37, 41, 49-52]. Hart, however, failed to take advantage of those time periods and continued to perform poorly until her termination. Further, HCFS reviewed whether it could lower Hart's production requirement before she made that request herself, undercutting any connection between her request for that same accommodation and her termination. Moreover, Hart admitted that HCFS terminated her because of her poor performance. [*Id.*, ¶¶ 77-78]. Thus, Hart cannot establish a *prima facie* case for retaliation, and HCFS's motion for summary judgment is **GRANTED** in this respect.

## IV. CONCLUSION

Accordingly, for the reasons stated herein, Defendant's Motion for Summary Judgment [Doc. 29] is **GRANTED**, and Hart's case is **DISMISSED WITH PREJUDICE**. A separate judgment shall issue.

**SO ORDERED:**

s/ Clifton L. Corker
United States District Judge